UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS LIDDELL,<br><br>        Plaintiff,<br><br>v.<br><br>DAVID BREEN, et al.,<br><br>        Defendants. | Civil Action No. 17-12841 (SDW)<br><br>OPINION |

**WIGENTON**, District Judge:

This matter comes before the Court on the motion for summary judgment filed by Defendants Breen, Rivera, and Holovacko. (ECF No. 131). Plaintiff filed an opposition brief, which appears to also serve as a counter-motion for summary judgment (ECF No. 136), to which Defendants have replied. (ECF No. 140). For the following reasons, this Court will grant Defendants' motion as to all of Plaintiff's federal claims, will decline to extend supplemental jurisdiction over Plaintiff's state law claims and will therefore dismiss them without prejudice, and will deny Plaintiff's counter-motion.

**I. BACKGROUND**

The following facts are drawn directly from Plaintiff's deposition in this matter. Plaintiff's claims arise out of an incident in which he was injured while being transported from prison to a medical appointment. (Document 7 attached to ECF No. 131 at 6). On that date, corrections officers Rivera and Breen brought him to a loading dock area, strip searched him, had him redress, then placed him in waist and ankle restraints. (*Id.*). Plaintiff's hands were thereafter individually cuffed to the chain around his waist. (*Id.*). Plaintiff's hands themselves were apparently still

1

mobile and he could still move his fingers. (*Id.*). Plaintiff was then moved to a "dog cage van" – a transport van in which the prisoner sits in a steel cage during transport. (*Id.*). When Plaintiff hesitated to get into the van because he believed the van to be dangerous insomuch as he would be bumped against the steel bars securing the prisoner seating area during transport, Officer Rivera "assured" him the van was safe and told him there were seatbelts in the van for the prisoner's use. (*Id.*). Rivera then opened the doors, and Plaintiff climbed into the prisoner seat, after which Rivera closed the door without securing Plaintiff's seatbelt. (*Id.* at 7). While Plaintiff noticed the seatbelts, he did not buckle them himself as he "could not pick up the seatbelts because [he] was handcuffed to waist chains" and the buckle part of the seatbelts were hanging below the seat.[1] (*Id.*). Plaintiff was unable to determine whether other inmates would have been able to seatbelt themselves under the circumstances, but he was unable to do so. (*Id.*). In any event, Plaintiff did not request to have his belt buckled or otherwise raise the issue to the officers' attention. (*Id.*).

While driving along Route 9 on the way to Plaintiff's doctor's appointment, Officer Breen "stepped on the brake" and Plaintiff was "propelled forward," hitting his head on the steal bulkhead which separates the prisoner section from the officer section of the van. (*Id.*). Officer Breen later reported that he hit the brakes in order to avoid an accident because a car had cut in front of him unexpectedly, and at his deposition Plaintiff did not dispute this explanation. (*Id.* at 8, 17). Plaintiff stated during his deposition that he did not believe that Breen had intentionally used the brake to injure him. (*Id.* at 8). Plaintiff admitted that he was in no position during the drive to evaluate how fast or recklessly the officer may have been driving, and had no ability to dispute the

---

[1] The officers involved instead state that they believed that Plaintiff had sufficient mobility to buckle and adjust his seatbelt and was told to do so. (*See* Document 1 attached to ECF No. 136 at 77, 93). The officers further averred that, per prison policy, the officers are not permitted to enter the prisoner compartment as they carry weapons, and all prisoners are required to buckle their own seatbelts. (*Id.* at 77).

officer's statement that he hit the brakes to avoid colliding with a vehicle that had cut in front of him. (*Id.*). Plaintiff further acknowledged that, had an accident occurred, his injuries may have been significantly more severe. (*Id.*).

As a result of the abrupt stop, Plaintiff struck his head and fell "face first on the floor." (*Id.* at 9). Plaintiff claims that he suffered a "brief moment" of unconsciousness following the incident. (*Id.*). Shortly after the incident, the officers pulled the van over and stopped to check on him. (*Id.*). After a brief evaluation, and Plaintiff's initial inability to get himself up, the officers determined that it was necessary to take him back to the prison for medical treatment. (*Id.*). The officers then drove him back to the prison, helped him out of the van, placed him in a wheelchair and had him taken to the medical department of the prison. (*Id.* at 10). Plaintiff was examined, and remained therefore examination for a few hours before being given Tylenol and taken back to his cell. (*Id.*). The following day, Plaintiff was seen again, and a doctor examined his head and neck and ordered X-rays and a CT scan, which appeared normal. (*Id.* at 10, 14). While Plaintiff continued to suffer from some neck and head pain following the incident, he was given ibuprofen for this pain. (*Id.* at 13). Although Plaintiff suffered from headaches and neck pain as a result, he admitted at his deposition that he suffered no other injuries, and that he did not suffer from any disfigurement or permanent loss of body function as a result of the accident. (*Id.* at 17). Plaintiff also had no out of pocket expenses related to his treatment, all of which was covered by the prison. (*Id.*).

Based on this incident, Plaintiff contends that Officers Breen and Rivera were negligent in failing to buckle his safety belt, and put him in a dangerous position. Plaintiff also contends that Defendant Holovacko was negligent in training them to safely transport prisoners. Plaintiff

3

connects Holovacko to these events based solely on his belief that Holovacko was the supervisor of Breen and Rivera at the time of the incident. (*Id.* at 5-6).

## II. DISCUSSION

### A. Legal Standard

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *Id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d

4

546, 550 (D.N.J. 2014). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial." *Serodio*, 27 F. Supp. 3d at 550.

**B. Analysis**

**1. Plaintiff's deliberate indifference claims**

Defendants argue that they are entitled to summary judgment as to Plaintiff's sole federal claim – a claim against all three Defendants, albeit against Holovacko in his supervisory capacity, in which Plaintiff alleges that Defendants placed him under a substantial risk of harm, and were deliberately indifferent to that harm in failing to correct it. Such a claim has three elements – that the plaintiff "was incarcerated under conditions posing a substantial risk of serious harm, . . . the [defendant] was deliberately indifferent to that risk to his health and safety, and . . . the [defendant]'s deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir.2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A prison official acts with deliberate indifference where he knows of and disregards a substantial risk of serious harm to an inmate's health or safety. *Farmer*, 511 U.S. at 837. Because such a claim requires a showing of deliberate indifference – which is a species of recklessness – an allegation of mere negligence is patently insufficient to establish liability. *See, e.g., Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

In this matter, Plaintiff's claim of deliberate indifference arises entirely out of his allegation that Defendants Breen and Rivera failed to ensure that he was wearing a seatbelt before a minor traffic incident in which Breen was forced to brake in order to avoid a collision. Several courts

5

who have considered the question have found that even "[a]llegations of reckless driving, such as speeding or slamming on the brakes, even when coupled with the absence of safety restraints do not rise to the level of deliberate indifference." *Scott v. City of Philadelphia*, No. 19-2871, 2019 WL 3530909, at *3 (E.D. Pa. Aug. 1, 2019); *see also Otero v. Catalogne*, No. 08-282, 2010 WL 3883444, at *11 (W.D. Pa. Sept. 28, 2010); *Bryant v. Downs*, No. 09-1670, 2010 WL 2593564, at *5 (M.D. Fla. June 28, 2010); *Grisby v. Cotton*, No. 08-214, 2009 WL 890543, at *1 (S.D. Ga. Mar. 31, 2009). Here, Plaintiff bases his claim on far less – he does not assert recklessness on the part of Officers Breen or Rivera – instead he merely asserts that they "negligent[ly"] failed to buckle his safety belt for him, apparently believing Plaintiff to have the ability to buckle himself, and drove without complaint or request for a buckled belt from Plaintiff until another driver's actions forced Breen to sharply apply his brakes to avoid a collision which almost certainly would have caused greater injury to Plaintiff. Those actions do not amount to a reckless disregard of Plaintiff's safety, at most, as Plaintiff himself acknowledged at his deposition, those actions could rise to the level of negligence insomuch as they did not make certain that Plaintiff could buckle his seat belt. Plaintiff's testimony at his deposition is therefore patently insufficient to make out a claim of deliberate indifference against Officers Breen and Rivera. Breen and Rivera are therefore entitled to summary judgment as to Plaintiff's sole federal claim against them. Likewise, as Plaintiff's claims against Defendant Holovacko arise entirely out of the conduct of Breen and Rivera, he too is entitled to judgment as Plaintiff has not presented testimony or facts which could give rise to a claim of deliberate indifference against him relating to the actions in this matter. Defendants' motion is therefore granted as to all of Plaintiff's federal claims.

### 2. Plaintiff's state law claims

In addition to the two federal claims on which this Court will grant Defendants summary judgment, Plaintiff's Second Amended Complaint also contains a number of state law claims, mostly related to his assertion that Defendants were negligent in their failure to properly secure him with a seatbelt. Where a federal court has dismissed all of the claims over which it has original jurisdiction, that court may decline to extend supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). As the Supreme Court has held, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between . . . parties, by procuring them a surer-footed reading of applicable [state] law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Key Bank USA*, 163 F. App'x at 166. Indeed, the Third Circuit has held that "where [all of the claims] over which the district court has original jurisdiction [are] dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). As all of Plaintiff's federal claims shall be dismissed pre-trial insomuch as this Court will grant Defendants summary judgment as to those claims for the reasons discussed above, this Court finds that there are no special considerations which justify retaining pendent jurisdiction over Plaintiff's state law claims. This Court will therefore decline to extend supplemental jurisdiction over Plaintiff's state law claims and will dismiss them without prejudice. *Id.* To the extent Plaintiff wishes to pursue those claims, he may do so by refiling his state law claims in state court within thirty days. *Id.* (quoting 28 U.S.C. § 1367(d) for the proposition that the statute of limitations for any state law claim over

7

which a federal court declines to extend supplemental jurisdiction is tolled while that claim is pending in federal court and for thirty days after it is dismissed).

### III. CONCLUSION

For the reasons stated above, this Court GRANTS Defendants' motion for summary judgment, (ECF No. 131) in part, will enter judgment in favor of Defendants as to all of Plaintiff's federal deliberate indifference claims, and will dismiss Plaintiff's state law claims without prejudice as this Court declines to extend supplemental jurisdiction over those claims. To the extent that Plaintiff intended his response to the summary judgment motion (ECF No. 136) to serve as a counter-motion for summary judgment, that motion is DENIED. An appropriate order follows.

Dated: April 20, 2020

                                             *s/ Susan D. Wigenton*
                                             Hon. Susan D. Wigenton,
                                             United States District Judge